IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Theresa Lynn Kielman,                Case No. 19-21900-beh

                Debtor.                          Chapter 13

**DECISION AND ORDER**

This case is yet another illustration of why it is so difficult for Chapter 13 debtors to "go it alone" without counsel. Debtor Theresa Kielman eventually retained counsel, but not before letting a deadline pass. This decision addresses the consequences.

**JURISDICTION**

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This is a core matter pursuant to 28 U.S.C. § 157(b).

**BACKGROUND**

On June 22, 2018, Todd Kielman entered into a loan contract with AmeriCredit Financial Services, Inc. d/b/a GM Financial, to finance the purchase of a 2018 Jeep Renegade. Todd Kielman was the sole signatory on the car loan and agreed to make payments on the 22nd day of each month. ECF Doc. No. 78-1, p. 2-3.

Months later, on March 12, 2019, Theresa Kielman, Todd Kielman's wife, filed a voluntary petition to commence this Chapter 13 bankruptcy case. At the time of filing, Mrs. Kielman was *pro se*. She encountered a few problems initially, primarily related to the complicated nature of filing and maintaining a Chapter 13 case.[1] More than two months after beginning her case, on May 28,

---

[1] Mrs. Kielman's petition could be considered an "emergency filing," as she did not file her Schedules or Chapter 13 plan when she filed her petition on March 12, 2019. She sought

2019, Mrs. Kielman retained counsel. Her lawyer assisted with filing all required documentation, and her case moved forward. ECF Doc. Nos. 35 and 38.

Apparently because she was *pro se* at the start, Mrs. Kielman failed to list creditor AmeriCredit Financial Services, Inc. d/b/a GM Financial, the lender on her husband's vehicle, on her schedules and failed to provide notice of the bankruptcy to AmeriCredit until July 9, 2019. ECF Doc. No. 45, p. 12. AmeriCredit then filed a proof of claim on July 26, 2019, concerning the non-filing spouse's 2018 Jeep Renegade. The Court designated it as Claim No. 6.

On September 9, 2019, the Chapter 13 trustee filed an objection to AmeriCredit's claim, seeking to disallow it under 11 U.S.C. § 502(b)(9) as untimely. AmeriCredit filed a response and a motion to extend the deadline to file a proof of claim. At a hearing on the matter, the Court ruled that AmeriCredit had filed its proof of claim after the May 21, 2019 bar date and did not meet any of the exceptions listed in Fed. R. Bankr. P. 3002(c). Accordingly, the Court disallowed the claim as untimely. ECF Doc. No. 82. The Court noted that AmeriCredit retained the ability to seek relief from the automatic stay and rely on the nondischargeability afforded to it under 11 U.S.C. § 523(a)(3)(A).

Following the Court's order, AmeriCredit moved for relief from the automatic stay and the co-debtor stay under 11 U.S.C. §§ 362(d) and 1301(c). EFC Doc. No. 78. Its motion, filed on October 17, 2019, was based on cause due to lack of post-petition payments. *Id.* Mrs. Kielman objected, noting that her fifth amended plan provides for payment of AmeriCredit's disallowed claim outside of the Chapter 13 plan, and asking that the Court allow a "supplemental claim" for the post-petition arrearage to be paid within her plan. ECF Doc. No. 88. Additionally, she urged that the Jeep Renegade is necessary

---

leave from the Court to extend the time to file the balance of the required documents. ECF Doc. Nos. 11 and 12. After the extra time afforded, she submitted most of her documents, but the Summary of Assets and Liabilities, Schedule G, and a Certificate of Service for the Chapter 13 plan remained outstanding. The Court ordered Mrs. Kielman to show cause why her case should not be dismissed for the deficiencies. ECF Doc. No. 31.

for her effective reorganization and consequently "[i]t would be inequitable to provide (stay) relief . . . under the circumstances." *Id.* At a hearing on AmeriCredit's motion, the Court advised that a supplemental claim could not be permitted where the underlying proof of claim had been disallowed as untimely. The Court adjourned the matter for the parties to discuss alternative resolutions.

On November 27, 2019, the parties submitted a stipulation and proposed order in an effort to resolve the motion for relief from the automatic stay and co-debtor stay. Their stipulation proposed to allow the post-petition arrears to be paid through the Chapter 13 plan via a "section 1305(a)(2) claim to be filed by the creditor." The Court held a hearing for the parties to present argument on the issue and then took the matter under advisement.

Both AmeriCredit and Mrs. Kielman contend that section 1305 permits such treatment for amounts arising from post-petition default. The Chapter 13 trustee took no position on using section 1305 in this manner. Additionally, Mrs. Kielman maintained that the Court could reconsider AmeriCredit's disallowed claim under section 502(j) by weighing the equities of the case.

## DISCUSSION

### A. Section 1305

Section 1305 provides:

> (a) A proof of claim may be filed by any entity that holds a claim against the debtor-
>
> …
>
> (2) that is a consumer debt, *that arises after the date of the order for relief* under this chapter, and that is for property or services necessary for the debtor's performance under the plan.

11 U.S.C. § 1305 (emphasis added).

The elements of section 1305(a)(2) are in the conjunctive, that is, all three elements must be met. First, the obligation to AmeriCredit is a consumer debt. The term "consumer debt" means a debt incurred by an individual

primarily for a personal, family, or household purpose. There is no argument that the loan for the Jeep is not a consumer debt. Second, the property – the Jeep – is necessary for Mrs. Kielman's performance under her plan. The Jeep is driven by Mrs. Kielman's husband, who has a job to which he must commute, and with whom Mrs. Kielman lives and shares expenses. *See* ECF Doc. Nos. 45 and 88 (Amended Schedules I and J listing her husband's income and employment and Objection to motion for relief asserting that the Jeep is necessary for an effective reorganization).

The salient inquiry here is the third element—did the debt to AmeriCredit arise after March 12, 2019, the date Mrs. Kielman filed her bankruptcy petition? The term "debt" means liability on a claim. 11 U.S.C. § 101(12). In turn, the term "claim" means a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

The Seventh Circuit considered the Bankruptcy Code's broad definition of claim against its definition of "debt" as a liability on a claim, and determined that Congress gave the same broad meaning to debt. *In re Energy Co-op, Inc.*, 832 F.2d 997, 1001 (7th Cir. 1987). Accordingly, "when a creditor has a claim against a debtor—even if the claim is unliquidated, unfixed, or contingent—the debtor has incurred a debt to the creditor." *Id.* Several years later, the Seventh Circuit determined that a pre-petition contract to pay condominium assessments created a debt that arose pre-petition, even if the assessments were not levied until after the bankruptcy petition. *In re Rosteck*, 899 F.2d 694, 696-97 (7th Cir. 1990).[2]

Adhering to Seventh Circuit application of Code definitions, a debt may come into existence, or arise, before it has fully matured and before payment

---

[2] While amendments to the Bankruptcy Code superseded a portion of the rulings of *In re Rosteck*, 899 F.2d 694 (7th Cir. 1990), it is still good law in the Seventh Circuit regarding timing of pre-petition debts and post-petition events. *See In re Stone*, 243 B.R. 40, 42-43 (Bankr. W.D. Wis. 1999) (similarly finding that condominium maintenance fees that accrued post-petition under a pre-petition contract constituted a pre-petition debt).

becomes due. That the loan's signatory defaulted post-petition does not change the nature of the debt itself. *In re Rosenthal*, 233 B.R. 815, 817 (Bankr. C.D. Ill. 1999).

In the instant case, Mr. Kielman signed the contract nine months before his spouse filed for bankruptcy. According to the contract, the buyer is liable for the entire purchase price, increasing daily according to the "Finance Charge," and could become liable for late charges, returned check charges, costs associated with repossession, and others. ECF Doc. No. 78-1, at 2-3. While charges related to a default may not be applied until the default occurs, Mr. Kielman assumed the responsibility for those possible debts before his wife filed her bankruptcy petition. Therefore, the liability on the debt owed for the 2018 Jeep Renegade is a pre-petition debt, and section 1305, applicable only to debt that *arises after the date of the order for relief*, is not applicable in this case.

**B.     Section 502(j)**

Counsel for Mrs. Kielman raised section 502(j) as a basis for relief for the first time at the December 10, 2019 hearing. But this section of the Code does not apply here. As an initial matter, counsel did not follow the proper procedure for invoking section 502(j). Rule 3008 mandates the procedure for reconsidering orders allowing or disallowing claims under section 502(j). Fed. R. Bankr. P. 3008. The Rule states, "A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." By orally making a request for section 502(j) relief instead of providing notice of a hearing on such request, debtor's counsel short-circuited the required process. As a result, the request is not properly before the Court.

In any event, even if adequate notice were given, section 502(j) likely would not afford the debtor the relief she seeks. Section 502(j) comprises two wholly separate steps. First, the Court must determine that "cause" exists to reconsider the claim. *In re Morningstar*, 433 B.R. 714, 719 (Bankr. N.D. Ind.

2010). Only if such "cause" is found will the Court then evaluate whether "the equities of the case" warrant allowing or disallowing a claim. *Id.*

A section 502(j) inquiry here would face numerous obstacles. The Court questions whether the debtor has stated a legal basis for the Court to reconsider its disallowance of an untimely claim after a valid ruling on the merits. *See* Fed. R. Bankr. P. 3008, Advisory Committee Note (1983) ("Reconsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court."); *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 179 (7th Cir. 1994) (ruling that Fed. R. Bankr. P. 9024 (incorporating Fed. R. Civ. P. 60) is the standard when considering "cause" to reconsider); *In re Kirwan,* 164 F.3d 1175, 1177 (8th Cir. 1999) (explaining that, among other things, the court would look to "whether claimants have a *meritorious* claim" (emphasis added)). Here, there is no dispute that the Court was correct in its original legal determination that AmeriCredit's claim was untimely. The Court is not aware of any authority—nor has the debtor provided any—that would permit the Court to allow a disallowed, untimely claim on reconsideration.

## C. Relief Available to AmeriCredit

The Court recognizes that if Mrs. Kielman had the benefit of counsel at the beginning of her case, AmeriCredit likely would have received timely notice of this bankruptcy proceeding, and it likely would have filed a timely proof of claim. Any post-petition default then, depending on degree, could have been considered for a supplemental claim payable through the plan, as is this district's practice. *See In re Vianca Wright*, No. 2010-34534, ECF. Doc. No. 94, at 2 (Bankr. E.D. Wis. April 18, 2012) (Judge Pepper describing supplemental claims as particular to this district).

At present, because it does not have an allowed claim, AmeriCredit may rely on the nondischargeability afforded to it under 11 U.S.C. § 523(a)(3)(A). Notably, an alternative not yet pursued by the parties is available. Mrs. Kielman, as the debtor, may choose to seek an extension of the deadline to file

a claim under Rule 3004, which may be enlarged under Rule 9006(b)(1) for excusable neglect. To permit the debtor to consider that alternative, the Court will hold AmeriCredit's motion for relief from stay in abeyance pursuant to 11 U.S.C. § 362(e)(2)(B)(ii) until January 17, 2020.

## CONCLUSION

For the reasons discussed above, the parties' request for approval of their stipulation and proposed order is DENIED, without prejudice. In the interim, the automatic stay of 11 U.S.C. § 362(a) will remain in effect as to AmeriCredit until further order of the Court or termination as a matter of law pursuant to 11 U.S.C. § 362(c).

Dated: December 16, 2019

By the Court:

Beth E. Hanan
United States Bankruptcy Judge